## Luke Forbes *versus* Levi Parker.

Personal property was mortgaged to secure the payment of a promissory note bearing
even date with the mortgage and payable in six months from that time, it being
stipulated in the deed, that until there should be a default in the payment of the
note, the mortgager should retain possession of the property.   On the day after
the execution of the mortgage, the property was attached and sold by an officer
at the suit of a creditor of the mortgager, without pursuing the provisions of *St.*
1829, *c.* 124, [Revised Stat. *c.* 90, § 78.]   It was *held*, that *case* might be main-
tained by the mortgagee against the attaching officer, before the note became due;
and that the mortgagee was entitled to recover in such action the value of the
property, not however exceeding the amount of his claim against the mortgager,
with all the damages sustained in the vindication of his rights.

Under the *St.* 1832, *c.* 157, [Revised Stat. *c.* 74, § 5,] which provides, that no
mortgage of personal property " shall be valid against any other person than the
parties thereto, unless possession of the mortgaged property be delivered to and
retained by the mortgagee, or unless the said mortgage be recorded in the office
of the clerk of the city or town, where the mortgager shall reside," the recording
of the deed is equivalent to an actual delivery of the property.

T<small>HIS</small> was *case* against a deputy sheriff, for taking forty-
eight swine, which had been mortgaged to the plaintiff by
Edward Walker, on July 5, 1833, to secure the payment of
a promissory note of the same date, payable in six months
from that time.

The trial was before *Wilde* J.

The mortgage deed, which was duly recorded on the dav of its date, in the records of the town of Charlestown, where the mortgager then resided, contained a stipulation that until there should be a default in the payment of the note after it became due, the mortgager should retain possession of the swine, for the purpose of fattening and preparing them for market.

On the next day after the mortgage was executed, the defendant attached the swine, on a writ in favor of Nathan Tufts & Co., who were alleged to be creditors of the mortgager, and sold them under such attachment, without pursuing the provisions of *St.* 1829, *c.* 124, [Revised Stat. *c.* 90, § 78.] This attachment and sale were the cause of the present action.

The defendant objected, that *case* was not the proper form of action ; but this objection was overruled.

There was no evidence offered by tne plaintiff of any actual delivery of the property in question ; and the defendant contended, that without such evidence, the action could not be maintained.

In this stage of the cause it was taken from the jury. Upon these facts the Court were to order a nonsuit or default, as law and justice should require, reserving to the defendant, in case of a default, the right of being heard on the question of damages.

*Fletcher* and *Tufts*, for the defendant. If the plaintiff was the real owner of the property mortgaged, he had the constructive possession ; and trespass would be the proper form of action, and not case. *Woodruff* v. *Halsey*, 8 Pick. 333. If trespass could not be maintained, it must be because the possession continued in the mortgager ; and as the defendant took only the right which the mortgager had, if the mortgagee could not maintain an action against the mortgager, he could not against the defendant. *Wheeler* v. *Train*, 3 Pick. 255 ; *Gordon* v. *Harper*, 7 T. R. 9 ; *Holly* v. *Huggeford*, 8 Pick. 73. The rights of the plaintiff are to be determined, as they existed when the action was commenced. The interest of the plaintiff in the property was then contingent ; for it could

Forbes
*v.*
Parker.

*April 3d.*

not then appear but that the mortgager might pay the note at its maturity ; and in such case, the plaintiff would have suffered no injury from the attachment and sale.

No property passed to the plaintiff by the mortgage, there being no delivery. Delivery is not dispensed with by the *St.* 1832, *c.* 157, providing for the recording of mortgages of personal property. *Butterfield* v. *Baker*, 5 Pick. 522 ; *Flagg* v. *Dryden*, 7 Pick. 52 ; 11 Pick. 352 ; 3 Inst. Justin. *tit.* 24 ; 6 Dane's Abr. 595 ; *St.* 1783, *c.* 37.

*B. Sumner* and *Willis*, for the plaintiff, to the point, that *case* was the proper form of action, cited 1 Chitty on Pl. 166, 138, 133 ; *Lienow* v. *Ritchie*, 8 Pick. 235 ; *Walcot* v. *Pomeroy*, 2 Pick. 121 ; *Wheeler* v. *Train*, 3 Pick. 255 ; *Gordon* v. *Harper*, 7 T. R. 9 ; *Melville* v. *Brown*, 15 Mass. R. 82.

*April 8th.*   PUTNAM J. delivered the opinion of the Court. The question, whether an action will lie for damages to a reversionary interest in personal property, was settled in the affirmative by the case of *Ayer* v. *Bartlett*, 9 Pick. 156. We have reëxamined that case, and have no desire to disturb the decision. Within a few months after it was pronounced, the legislature passed " a bill relating to mortgages and pledges of personal property and property subject to any lien created by law." *St.* 1829, *c.* 124. And the mortgage mentioned in the case at bar, was made more than two years after the passing of that act.

There is no suggestion of any fraud in the case. The plaintiff was the mortgagee ; and by his permission the swine mortgaged were to remain in the possession of the mortgager six months, and until default of payment, " for the purpose of fattening and preparing them for market." Now we say in this case, as was said by the Court in *Ayer* v. *Bartlett*, that the creditors can be in no better condition than the debtor would be in regard to the plaintiff. If Walker, the mortgager in possession, would have had no right to sell the property before the expiration of the time of payment of the debt, it is clear, that his attaching creditors would not have any such right. Such an act on the part of Walker, might, according to *Farrand* v. *Thompson*, 5 Barnew. & Ald. 826, have been considered as putting an end to the contract on his part, and

a revesting of the right of possession in the mortgagee, so as to enable him to maintain trespass or trover against the vendee.

But the proceedings against Walker were *in invitum*, and therefore the contract may not have been rescinded. If it were not, then the action of trespass upon the case would be the proper remedy for the plaintiff, the mortgagee, whose reversionary interest was so destroyed.

Then it is objected for the defendant, that the plaintiff's rights are to be determined as they existed at the commencement of his action, which was immediately after the mortgage and six months before his debt became due ; that it could not then appear but that the mortgager would pay the debt when it would become due ; and that if he did, then the plaintiff would have suffered no damage from the acts of the defendant. The answer, we think, is, that the plaintiff should be put in as good a situation as he was in, when the property was thus taken away by the defendant. This is a special action of the case, and the plaintiff would have a right to be put into the possession of as much property as had been taken from him. The plaintiff would hold the money subject to the just claim of the mortgager, or of his legal assigns, for an account. That would seem to be the just and equitable rule of the common law applicable to the case.

But the legislature has provided by the statute before re cited, ample remedy for the creditors of the mortgager. The act is predicated upon the confirmation of the contract between the mortgager and mortgagee. If there should be any beneficial interest in the former remaining after paying the debt, it might be secured by the process of foreign attachment, or by an attachment upon the property itself subject to the lien : in which latter case the Court might order and decree, that on payment or tender of the debt to the mortgagee, the property should be delivered over to the officer.

But the difficulty in the case at bar probably was, that the property mortgaged would not have been more than sufficient to pay the debt, and therefore no benefit would have arisen from the trustee process, or that there was no beneficial interest in the mortgager to arise from keeping and fattening the swine, in the six months during which the mortgager was to

possess them. If the contract were faithfully performed by the mortgager, the property mortgaged would be much increased in value ; and if it were made sufficient to pay the debt when due, the mortgager would have had recompense for his expense, care and labor ; if more, the mortgager would have the excess. But a creditor of the mortgager, who had attached the property, and substituted himself in the place of the mortgager, might, for aught that appears, have been at great expense, and the benefit would have accrued to the mortgagee, if, after all, there had not been a surplus. Be these conjectures as they may, the remedy for the creditor of the mortgager pointed out by the *St.* 1829, *c.* 124, should have been pursued. He should either have summoned the mortgagee upon the trustee process, according to the first section, or attached the property subject to the lien created by the mortgage, according to the second section ; which provides, " that the person for whose benefit the same attachment is made or execution levied, shall first pay or tender to the mortgagee, pledgee or holder, the full amount of the demand for which the said property is mortgaged, pledged or subject to any lien as aforesaid." But instead of this, the creditor of the mortgager has adopted a course which deprives the mortgagee of all benefit from his mortgage. He has caused the property to be attached and sold for his own security or payment, without making any provision for the payment of the debt due to the plaintiff, the mortgagee.

We all think, that it is not for such an attaching creditor of the mortgager thus to disturb and usurp the rights of the mortgagee.

And we think that the mortgagee has a right to recover damages presently for the value of the property, not exceeding however the amount of his just claim against the mortgager, with all the damages sustained in the vindication of his rights.

The objection, that there was no actual delivery, cannot be maintained, as the recording of the mortgage deed in the records of the town of Charlestown, where the mortgager resided, was legally equivalent to an actual delivery. That point has been recently determined in the case of *Bullock* v. *Williams. ante. p.* 33

Therefore, according to the case reported, the defendant is to be defaulted, and the damages assessed by the jury.